BERZON, Circuit Judge,
concurring:
I concur in the disposition. I write to clarify that the stipulated judgment here should not be given controlling — or even much — weight in the equitable analysis we direct, and to point to a second consideration relevant to that analysis.
I.
The circumstances here are that the third-party litigation was going to terminate, one way or the other — that is, through settlement or through litigation— independently of this federal court litigation about the interim payment of medical expenses, the so-called Ridley payments. This litigation was not settled; it was mooted because it concerned an inherently time-limited obligation, covering only the period during which the separate litigation between the alleged tortfeasor and the plaintiff was pending. That time period could be longer or shorter, depending upon whether the parties litigated or settled, but it was going to end, and was going to do so independently of whether the insurance company was ultimately determined to have owed Ridley payments before termination.
In other words, had the tort litigation not been settled but terminated through litigation, the question in this case— whether Ridley payments were due pre-termination — would still have been mooted rather than determined by an appealable judgment. A litigated judgment in the tort case would presumably have been treated as “happenstance” as it affected this litigation. So the termination by settlement of the third-party tort action, while not happenstance as to that action, was tantamount to happenstance as to this one; for purposes of this action, what mattered was the termination, not how it occurred. Yet, it is not clear to me that the *660 district court even recognized, or appreciated, that the stipulated judgment involved a different case and different parties— facts of obvious relevance to the equities analysis.
Moreover, it is absurd to suppose that the parties to the tort action would have settled that action so as to moot out the question whether Ridley payments should have been made. The settlement was for much more than the Ridley payments could have been, and involved parties who had no obligation to make Ridley payments.
II.
For me, the hard question in this case is how the district court’s denial of Ayotte’s claim for common law breach of the insurance company’s good faith obligation with regard to the Ridley claim affects the va-catur question. It appears that Ayotte either did not pursue on appeal, or invited dismissal as to, that claim the last time he was before us.
The Ridley good faith claim would appear to survive the termination of the underlying tort suit. That claim was for consequential damages due to the noncompliance with the Ridley requirement to pay interim medical costs, not for those medical payments themselves. Thus, had Ay-otte pursued the appeal on the common law bad faith claim, he would probably have avoided dismissal of — and thereby litigated on appeal — that claim.
On the other hand, we deemed the case moot over American Economy’s vigorous opposition, and we are not free to reconsider the correctness of our decision. Still, Ayotte’s mistake — if that is what it was— in failing separately to pursue on appeal a claim he probably could have litigated had he sought to do so may have some weight in the equitable balance to be conducted on remand.
In sum, there are two unusual circumstances in this case — the settlement was of separate litigation only indirectly connected to this case, and this case originally included a claim that appears to have been considered moot only because Ayotte did not propose to continue to litigate it once the Ridley payments themselves were out of the picture. These circumstances should be weighed by the district court on remand, in addition to any others advanced by the parties.